And we'll hear from Mr. Schaefer. May it please the court. My name is Brian Schaefer. I'm a legal aid attorney and appearing here pro bono on behalf of the petitioner, Hamid Kamara. Nationality law is designed to match a child's citizenship to that of their parents. It's important to remember that this case is not really about a 33-year-old man from Sierra Leone, but really about a 16-year-old boy in the suburbs of Houston, Texas. The petitioner in this case cannot be removed from the United States because he became a citizen of the United States when he was 16 years old, when his mother naturalized. You have to get a proof. No, wait a minute. He claims he has derivative citizenship, but is that the same as citizenship? Don't you have to get papers or something to evidence that? It's acquisition of citizenship, Your Honor, and it's automatic by operation of law. It does not require a petition or an application. Okay. The facts in this case are simple and clear. The petitioner's father abandoned his family in Sierra Leone when the petitioner was a young child. His father remained in Sierra Leone, stopped supporting the family, and cut off contact with the family. What sort of record evidence do we have of the various statements you're making? Most of it all occurs in affidavits that were submitted to the court, as well as to the immigration court. The judge did not take any testimony in the case, so it's all based on documentary evidence that was submitted. After the father abandoned his family, his mother came to the United States and immigrated to the United States. His mother filed for divorce in Texas. The Texas court did not make a custody determination because the petitioner was not living in Texas at the time. Just after the divorce, the petitioner came to the United States, lived with his mother, got his green card, lived with his mother until he turned 18. When he was 16, his mother naturalized and became a U.S. citizen. All these events occurred before he was 18. Under former USC section 1432, a child automatically becomes a citizen upon, and I quote the statute, the naturalization of the parent having legal custody of a child when there has been a legal separation of the parents. Legal custody is possession, care, control, and authority of a child. This court partially interpreted the statute in Bustamante, Barrera v. Gonzales. I was struck by the fact that, and I suppose you were surprised when you saw who was on this panel, that two of the three members of the Bustamante panel are here, and I'm not one of them. And so at least we've got two persons who are very familiar with Bustamante and I suppose have their own ideas about it. But it seemed to me in Bustamante the issue was simply if you have a decree with a joint custody, and so each parent has joint custody, whatever that might mean in Texas, that that was the sole issue presented in the case. Is that your reading of it? That's our reading, that it's a specific case to a specific set of facts. The court acknowledged what you're saying, the sole as opposed to joint, or sole as opposed to distinguished from joint, at the beginning of the hearing. The other thing that's interesting about the Bustamante decision is our case that we're looking at here, with the no custody determination, was addressed in Bagot, which is a Third Circuit case. In the Bustamante decision, the Bustamante court cited the Bagot decision as being a different issue. And the Bagot decision deals with the facts of this case when you have no custody determination, whereas the Bustamante decision was dealing with whether a joint legal custody standard was allowed under the statute. Well, this all goes back to matter of M, doesn't it? Yes, Your Honor. We believe matter of M is the standard that should be applied and should have been applied by the court. The matter of M standard, it's been records for over 64 years now. It's an agency interpretation, which is especially interesting about the matter of M standard, the actual uncontested custody standard, is it was developed from the Nationality Act of 1940. It was a decision, an agency interpretation made in 1950, and then Congress basically renumbered the statute in 1952 and readopted the statute with the same language. The Supreme Court held in Bowen v. Massachusetts that there's a well-settled presumption that Congress understands the state of existing law when it legislates. This Court cited Bowen recently to interpret this same statute in Gonzalez v. Holder, which was issued just October. It was a different meaning of different words in the statute, but it was that exact statute. The matter of M standard makes sense in these factual situations. As I mentioned earlier, legal custody— Did the IJ or the BIA, did they make any factual findings that would bar you from matter of M? If we interpreted that matter of M applied, did they make any factual findings? I mean, we don't have anything from the father here in the record, do we? The father has some rights to the custody of his child, and I don't see anything in here that talks about the father's rights. And we don't have a divorce decree that says anything about his rights, and he had custody of the child for a significant amount of time. Your Honor, if I may, I believe that's two questions. The first question, did the court make any factual determinations? And the answer is no. The immigration judge—we presented the issue exactly like we're presenting here. We explained there was no custody determination, and the immigration judge took the— and we could not meet any standard if we didn't have a custody determination. We were arguing from the beginning that matter of M applied, so no factual findings were really made. There were witnesses. There was a witness list, but no witnesses were heard from in the case. The other issue about the custody rights of the parent, with all due respect, we believe that that's kind of a red herring. The legislative history of the Nationality Act and Immigration Nationality Act make no reference to the custody of the parents. It's kind of a—it's convoluting custody rights with parental rights. The citizenship of a child has no effect on whether a parent becomes—has custody rights. It doesn't distinguish any custody rights. The custody rights would remain even if your child was a citizen. So if the kid had been—if the kid—if there was a custody decree in another country, and one of the parents kidnapped the kid and brought it to the United States, and the kid turned 18 while in the U.S., you say that doesn't make any difference at all? That would make a difference under the Hague Convention, and the issue that would come into play is whether that custody decree conformed to the UCCJEA. Well, so then custody does have something to do with this. It does in terms of—for that, but it would not change the citizenship status of the child. What it would do is the parent— So you're saying the child would become a citizen by—derivatively. The child would be a citizen, but— Even though the child had been kidnapped from the person with lawful custody. And the child would still be returned to his country to his parent. As an American citizen. As an American citizen, and it would have no effect on— You can't deport American citizens. But it wouldn't be a deportation. In that case, it would be a decision made by a parent over the care, control, and authority of the child. Well, we're talking citizenship here. So you're saying that it wouldn't matter if the child— Custody—you're saying custody is so irrelevant that— which it clearly is not because Matter of M went on a great length about custody. But just in a different context, which was where there was, you know, a Jewish, a mixed marriage, and the Nazi laws, and so on, and then no formal custody determination. The issue with reading it that way, Your Honor, would be under the next statute, 1433, 8 U.S.C. 1433, it allows a parent to apply for citizenship for a child without the permission of the other parent, when a child does not automatically become citizen. An example of when this statute was passed, you had to meet the standards by age 16, but between age 16 and 18, a parent could apply. That's no longer the law. Or under the Child Citizenship Act of 2001, which overrode this statute, and this is why it's a former statute, a parent would, a child would automatically derive citizenship in this factual situation. And in that case, the parent, the noncitizen parent's rights are not extinguished. They would still be evaluated under the Hague Convention, and they would look at the residency of a child, which is where the child lives, or in the case of the facts that you presented, where the child lived when the custody determination was made. Well, I don't really care about what the Hague Convention says and about the kidnapping laws and all that. I'm just saying that your argument is carried to an extreme that I do not believe matter of M even allows. Okay. You can do well enough on the narrow facts of this case, probably, but . . . Yes, Your Honor, I understand. Okay. If you are asking us, in effect, to reverse and render, that's not the correct term, but you want this court to say the BIA erred, and not only did the BIA err in relying on Bustamante instead of matter of M, but based on the affidavits or other evidence in the record, the mother did have the term you use, sole actual custody or whatever, of Camara when she became a citizen prior to his being 18. The alternative is, as you allude to and as the government points out in its brief, that if we need . . . that if we can't, in effect, ourselves find that she had custody, that we transfer it to the district court? That's correct, Your Honor. What happens then? So we transfer it to the district court? Does he remain . . . does your client remain in prison or wherever he's detained during the district court hearing? I'd like to bring first the attention to the court. My client has been released from custody. He's not . . . he's living in Houston, Texas right now. He's been released from custody because he's . . . Sierra Leone didn't recognize his citizenship and didn't issue a travel document, so he's living in Houston, Texas at this point, either as a U.S. citizen or stateless. If the court has . . . if the court agrees with our interpretation, the court would have two options under 8 U.S.C. 1252b-5. Under 8 U.S.C. 1252b-5a, the court could look at the evidence and say there's no issue of material . . . of genuine fact and declare that my client's a U.S. citizen. If the court believes there's an issue of material fact, then the case would be not remanded to the BAA, but remanded . . . would be sent to the district court for fact-finding. All right. Let's assume it's sent to the district court for fact-finding, and the district court says, well, I find that the mother didn't have custody.  Yeah. He is not a citizen. Then what happens? Then the government, once again, begins removal proceedings? They could, in theory, begin removal proceedings. They could . . . my client is under what's called an order of supervision. He's reporting to immigration every couple months, every three months, every six months. If that happened and there were . . . he exhausted appeals, then they could continue to try to work with Sierra Leone and get . . . to see if Sierra Leone would issue him a travel document. When was your client released from custody? I believe it was late last summer or early last fall. I'm not exactly sure of the date. But he . . . between . . . he kind of got moved around, so it was kind of hard to keep track of him. And he didn't contact me immediately when he was released, so I didn't . . . Which district court, if we transferred it, which one would it be to?  Southern District of Texas. Every other jurisdiction or agency that has interpreted the statute to this set of facts has interpreted that the actual uncontested standards should be used. In other words, with facts just like this, our client, the petitioner, would be a U.S. citizen. That includes Garcia in the Second Circuit, Bagot in the Third Circuit, Mouassa in the Eighth Circuit. So, instead of having an anchor baby now, you can have an anchor parent. In other words, this child grew up mostly with his father in Sierra Leone, right? Your Honor, he came here when he was about 9 or 10. Okay. And to make a comparison in the Matter of M case, the person in Matter of M came here when she was 17 and a half. So, the statute in this case was drafted to keep children with parents so that the state, the government, did not interfere. So, in situations where if you did not derive citizenship, what could happen is the mother could go live in Canada for a few years, try to come back with her child, and if her child wasn't a citizen, the child would be stuck in Canada and she would be here. So, that's why the statute was created, to prevent the government from separating the child with the parent, so that citizenship didn't become an issue at the border, so to speak. As I was mentioning, Mouassa in the Eighth Circuit, Mignasa in the Ninth Circuit. Matter of M is applied by the BIA, Immigration Courts, USCIS, the Department of Homeland Security's Administrative Appeals Office, and under Department of State Interpretation. So, it is, for all intents and purposes, the standard, unless Bustamante says that that doesn't apply to this case. And we believe that Bustamante is a limited case, limited to a specific set of facts. Thank you, Your Honor. Thank you. We have time for one more. Mr. Tennyson. May it please the Court. Good morning. My name is Robert Tennyson, and I represent the respondent, Attorney General of the United States, in this matter. You're going to need to speak up, sir. Oh, okay. Sorry about that. That's all right. I apologize. The petitioner has come here and made an argument, and that is that Bustamante drops out if you don't have a judicial custody decree. That after that, all you do is you look at the action. No, no, no. If I heard you correctly, he's not saying Bustamante drops out if you don't have a judicial custody decree. I think he's saying Bustamante drops out if joint custody wasn't awarded to the parents in some fashion. If he is saying that, I believe he's saying a joint custody awarded through a judicial custody decree or by operation of law, and that matter of M then picks up, and actual and contested custody, actually his interpretation, which is pure physical custody, applies without regard to whether that custody is contested or not, and whether or not that custodial determination of actual and contested custody leads to a single parent or to two parents. That argument was rejected by the board. The board's position is that Bustamante applies all the way through. So when you go to look at the custody decree, you look to see whether it's joint custody or sole custody. By operation of law, you look to see whether it's joint custody or sole custody. And also when you look for actual uncontested custody, you're looking to see whether it is joint custody. How do you square this with matter of M? Actually, the board has already done this, or at least— Well, please tell us. There is a case called Barrios-Larios. He actually cites it. It's a precedential decision by the board from this circuit, subsequent to Bustamante, in which the board applies both Bustamante and matter of M. Now, it's addressing a different question. It's addressing whether or not the child needs to be in the custody of the parent at the time of naturalization. The board found that the child didn't. The child could come in later. But what it did deal with, it dealt with a case in which there was a divorce. The mother, the father came to the United States. He naturalized. And then the mother subsequently handed over custody to him. She signed an affidavit and gave all full rights to the father who had naturalized. And the board found that the child had naturalized through the father. So this isn't a case of matter of M. getting the rug pulled out from under it or Bustamante pushing matter of M. out of the way. Matter of M. is an operationalization of the term legal custody. It's how you go and find out who has legal custody or whether it's one person or two people. Well, obviously there's no divorce decree here, right? That is correct. So what do you do in a case like this? I thought that was sort of what matter of M. was about. Right, exactly, Your Honor. You go. You don't have the divorce decree. You go and look at the law of Sierra Leone, for instance, or the State, and you say, where does it vest custody of the child? Does it do it by operation of law? If it doesn't, then you sail to the next step and you find out whether there has been a permanent transfer of custodial rights, as the Seventh Circuit noted in Winterburn, and was also noted by, I believe, in Bagot as well. And in addition, that permanent custodial transfer is uncontested. The other parent has handed it over in some way that is conclusive. In this case, the petitioner never argues that. Instead, the petitioner has argued actual uncontested custody means something more like actual physical custody. Who has the child? After you have no judicial custody decree, who has the child? And it can be both of them, one of them, neither, but that you don't have to satisfy the sole custody or some sort of single parent requirement. Yes, Your Honor. Well, let's assume here that the ‑‑ so this is a failure of proof in that they could have secured an affidavit from the father saying that he had transferred custody to the mother. They could have done that and they could have come to the board. He could have gone to the immigration judge and said, here is your actual uncontested custody that points to one single parent. And under Barrios-Lorez, under the way in which the board has interpreted Bustamante, he would have prevailed. You know, I notice you don't cite Barrios-Lorez in your brief. Right. And I don't see your name on the government brief either. That is correct, Your Honor. You're presenting material to us today that we haven't seen before from the government. That is correct, Your Honor. We, in fact ‑‑ I looked at Barrios-Lorez because, in fact, the petitioner had cited him originally. And that's where I ‑‑ you know, that is what led us down that trail. Well, assuming you're correct that they needed an affidavit from the father or something, that's not what the BIA turned its decision on. The BIA rested its decision solely on Bustamante. And so if we rule that Bustamante doesn't control, then I suppose you're saying, well, we've got to transfer this to the district court, as you all note in your brief, for it to hash all of this out. That is correct, Your Honor. If the court finds that Bustamante doesn't control in this circumstance, it would go to the district court for further fact finding. What would happen then? Well, if the court rules in his favor, district court rules in his favor, he's a citizen, there's no need to formally cancel the removal order or things like that. It is ‑‑ there is no removal order. If, on the other hand, he doesn't prevail, there is that removal order, presumably ‑‑ What would the issue on prevailing be? I don't know. What fact issue would the district court have? Let's assume that the court here finds that the actual uncontested custody standard applies. The district court, the immigration court, or the immigration court and the board make factual findings as to whether you had actual uncontested custody broadly. They didn't make an investigation into it because of the way in which he had argued the case below, and that is actual physical custody. But here we would be looking to see whether or not the facts in the case led to a surrender of the ‑‑ permanent surrender of the child to the mother and that surrender of legal rights. So in other words, you're just saying that if Bustamante doesn't control, the district court is going to do what the BIA would have done otherwise. That is correct, Your Honor. I'm very confused about that. Why wouldn't we just remand to the BIA and tell the immigration judge to handle it again? Because it would be that there's an issue of triable fact there. And under 15 ‑‑ I mean, 1252B5, that gets ‑‑ issues of triable fact get transferred to the district court. So in this case, I mean, the board found that Bustamante Barrera was controlling and operated to control because Bustamante, by its clear terms, doesn't sort of end at a judicial custody decree. The language ‑‑ what Bustamante Barrera focused on wasn't the term legal custody. It focused on the whole phrase, the parent having legal custody of the child. Correct? And principally in there, the terms the parent. Well, it doesn't matter whether you've got a judicial custody decree or any of these other things in figuring out who has legal custody, you still have to satisfy that requirement that there be the parent having the legal custody. So that goes all the way throughout. That's one reason why the board went that way. Also, the concerns about separation of parental rights, right? That it's not just parental rights in the sense of the father still has legal custody, still has control over the child, can make decisions. Those don't terminate. But there are certain obligations and rights that come with citizenship that one parent may not want to automatically have transferred by derivative citizenship. And that rationale that is in Bustamante applies just as powerfully to when you have a sole legal custody decree as to when you have actual uncontested custody. Finally, this Court had noted that you had the absurd result of there being, what, that you could have parents who separate and yet both of them could be in the country or and both of them could presumably naturalize and give the child citizenship under 231A1, but you've got this in round, in run, that parents can't do that. But once you've got the separation, you've got both of them having joint custody, both of them having control of the child, just as a married couple could, and yet one of them could naturalize and both of them and the child could derive from that. That applies just as well to the circumstance of the actual physical custody that he is arguing. In fact, the way in which he has conceived it— Other than the fact that there in Bustamante was a judicial order granting joint custody. There is no such order here. That is correct, Your Honor. But that reasoning that the Court had, not necessarily—it didn't hinge on whether it was judicial custody. It hinged, I believe, on whether you had two parents with that custody sharing that legal custody or not. So under Bustamante, does a parent that has custody need an order that gives them sole legal custody? No, Your Honor. Bustamante did not require an order of sole legal custody. At the end it said, this is one way it can be done, but we're not closing the door to the other ways in which you can establish that sole legal custody. So that there are a variety of other ways. It's a matter of M. The other way is a matter of M. The other ways are a matter of M. That is correct, Your Honor. And the other way is, I suppose, if the parents are both in the United States, and as you say, one naturalizes and then the rest of the family can apply for derivative, right? That is correct. So there are two other ways. Two other ways. Yes, Your Honor. If the Court has no further questions for me, the Government rests. Thank you. Governors, I was the attorney on the Immigration Court, so I can just give the Court a little bit of an explanation as to what's going on here from the record. The judge, the immigration judge, looked at sole legal custody as meaning a judicial order. We conceded that we had no judicial order. Fact finding was not really made on whether the facts in the case established actual uncontested order, custody, or any type of custody. The immigration's reading and the BIA's reading was you needed sole legal custody as a term that would only come through a judge, and we didn't have that order. So we never actually waived that issue. If that's an issue and the fact finding needs to be made, district court would be an appropriate place for that. That's what I interpret him to be offering you the opportunity to do. If that's the case, we still need a clarification on whether sole legal custody is required or if it's legal custody. And the reason so is to read it as sole legal custody is to, in effect, read sole into the statute, okay, which is that's the language the BIJ, the BIA, and their brief had tried to argue. You claim they're over reading the statute one way, and it appears to me that you're over reading the statute the other way, so that's really a mess. Your Honor, I think they're reading the Bustamante decision to change the statute, the holding sole legal custody as they're reading it to insert sole into the statute. I thought Mr. Tennyson was drawing a pretty fine set of lines here where he said there are three ways. He's not trying to excise matter of M. What he's saying, and Bustamante never talked about matter of M, correct? Correct, Your Honor. So he's saying there are three ways to do this. One is Bustamante, where you have to, there is this joint custody decree, and you have to prove sole legal custody. One of them is matter of M, where there was an affidavit in the record, correct? Yes, Your Honor. And the third one is derivative citizenship when both parents are in the United States and one naturalizes and the others can derivatively apply. Your Honor, that's correct. What's wrong with that tripartite reasoning? I don't disagree with that reasoning. Okay. I believe if the court transfers the case to district court, it should be with the instructions that apply the matter of M standard, that Bustamante did not create a new standard of sole legal custody. Well, that being the case, then, are you going to come up with, you say you're going to come up with an affidavit that this father in Sierra Leone relinquished any responsibility for this child? I don't know if we can come up with an affidavit from the father, but we can definitely have family members and other people who would know the facts. As I mentioned, the father has essentially disappeared from his life, and there was a war in Sierra Leone in the 90s. We don't know where the father is, but we can still try to establish factually whose custody this is. No, it's Boko Haram, I hope. No, it's a different area. So you were never given the opportunity to present any of this? Never given the opportunity. As I mentioned, it doesn't show up on the record, but we had a witness list. The witnesses were at the courtroom, in the courtroom, and on the day of the merits hearing the judge made a decision that do you have a custody order of sole legal custody? We don't, Your Honor. Well, I don't have to listen. I don't have to hear the witnesses because they can't prove you have a custody order was how the decision was made, and we acknowledge we couldn't prove there was a custody order. There was no custody order. That was what the issue was. Your Honor, back to the situation with the government is maybe we are agreeing on the same thing here. To us, the rule to determine legal custody would basically break down this way. Do you have a formal separation? If there's no formal separation, you're not a citizen. That's clear. That's the made decision. The next question would be is there a custody determination? If there's no custody determination, you use the matter of M standard. The next step would be bustamante. If you have a custody determination, joint doesn't work. It requires sole, and that would still, in a sense, keep bustamante as law, but it would just under these specific set of facts would say when you don't have a custody order, you use the matter of M standard. Of course, Dad could turn up five years from now, and it could turn up that he's the gold king of Sierra Leone, and now he's given up his rights to this kid, and this kid wouldn't be able to inherit, perhaps. I believe that would be a custody and inheritance issue. I don't know. I mean, that's a unique set of facts. I don't know if that would be. Well, I mean, I'm just turning it in terms of the interests of the family unit and just maybe just saying that Dad has abandoned the family. I guess the point is that that's not before us. Your Honor, may I answer the question? Sure. The issue with that that I would point out is the standard for matter of M, the standard we're arguing, is actual uncontested custody. It's not physical custody. We're not arguing just prove you live with your mother. We're arguing prove you live with your mother, and your father wasn't trying to acknowledge or trying to get rights over you because the mother had no reason to go to a family judge and get a custody order if Dad is absentee and he's gone. She has no reason to do that. We're arguing for the ability to make that, to prove those facts. Thank you, Your Honor. Okay. Thank you very much.